DOCKETED ON CM
MAY 18 2004
BY 062

FILED
CLERK, U.S. DISTRICT COURT
MAY 18 2004
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NHAN NGUYEN,<br><br>Petitioner,<br>v.<br><br>ANTHONY A. LAMARQUE, Warden,<br><br>Respondent. | CASE NUMBER<br><br>CV 02-8447-AHM(PJW)<br><br>NOTICE OF FILING OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

TO: All Parties of Record

| | |
|---|---|
| Eric R. Larson<br>Law Offices of Eric R. Larson<br>330 J. St., Ste. 609<br>San Diego, CA 92101 | Jason C. Trav, Deputy Attorney General<br>300 S Spring Street, Suite 500<br>Los Angeles, CA 90013-1230 |

You are hereby notified that pursuant to the Local Rules Governing Duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed on May 18, 2004, a copy of which is attached.

Any party having objections to the report and recommendation shall, not later than **June 7, 2004**, file and serve a written statement of objections with points and authorities in support thereof before the Honorable Patrick J. Walsh, U.S. Magistrate Judge.

Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

The report and recommendation of a Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until the judgment and/or order by the District Judge has been entered.

Dated: May 18, 2004

CLERK, UNITED STATES DISTRICT COURT

By [signature]
Deputy Clerk



21

FILED
CLERK, U.S. DISTRICT COURT
MAY 18 2004
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NHAN NGUYEN, Petitioner, v. ANTHONY A. LAMARQUE, Respondent. | CASE NO. CV 02-8447-AHM(PJW) REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable A. Howard Matz, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that the Petition be denied and the action be dismissed with prejudice.

I.

SUMMARY OF PROCEEDINGS

A. State Court Proceedings

In 1999, Petitioner was convicted by a Los Angeles County Superior Court jury of second-degree murder. (Clerk's Transcript ("CT") 298.) The jury also found that Petitioner had used a firearm

in the commission of the offense. (CT 298.) The trial court sentenced him to 25 years to life in state prison. (CT 554.)

Petitioner appealed to the California Court of Appeal, which affirmed his conviction, but modified the judgment without affecting the length of Petitioner's sentence. (Return to Petition for Writ of Habeas Corpus ("Return"), Exhs. B-C.) Thereafter, he filed a petition for review in the California Supreme Court, which was summarily denied. (Return, Exhs. D-E.) Petitioner did not seek collateral relief in the state courts.

B. Federal Court Proceedings

On November 4, 2002, Petitioner, represented by counsel, filed a federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, claiming that the prosecution's failure to produce *Brady* material deprived Petitioner of his right to a fair trial under the Due Process Clause. (Petition for Writ of Habeas Corpus ("Petition") at 5.) On December 30, 2002, Respondent moved the Court to dismiss the Petition on the ground that it was unexhausted. The Court denied the motion. Respondent then filed a Superseding Return to Petition for Writ of Habeas Corpus ("Superseding Return"), addressing the merits of Petitioner's claim. Thereafter, Petitioner filed a Traverse.

II.

STATEMENT OF FACTS[1]

On the night of April 8, 1997, Petitioner shot and killed Alan Lai from the passenger seat of a Honda Accord. According to the prosecution, Petitioner, a "V-Boys" gang member, shot Lai because he

---

[1] The following facts were derived from the trial and appellate record. (*See* Return, Exh. C at 47-54; Reporter's Transcript ("RT").)



SCANNED

thought Lai was member of a rival gang called "Wah Ching." The defense, on the other hand, contended that, Petitioner shot Lai in self-defense because Lai was threatening Petitioner and Petitioner was afraid.

At trial, the prosecution called a number of Wah Ching gang members or associates who were with Lai on the night he was killed, including Johnny Lai, the victim's brother, Jeffery Voong, San Vong, Christopher Tong, and Thomas Leung. The prosecution also called Buu Huynh, the driver of the Honda Accord Petitioner was in when he shot and killed Lai. Huynh, who had originally been charged as an accessory in Lai's murder, agreed to cooperate and testify for the prosecution in exchange for a lesser sentence. Jackson Chong, an eyewitness who was not aligned with either Lai's group or Petitioner's group, testified for the prosecution as well.

In essence, the prosecution established at trial that Petitioner and Huynh were in a restaurant on the night of the shooting, as were the victim, his brother Johnny Lai, and Voong, Vong, Tong, and Leung. It was not clear whether members of Petitioner's gang were confronted by or confronted Wah Ching gangmembers while they were in the restaurant. At some point during the evening, Petitioner and Huynh left the restaurant and got into the Honda, which was parked in the parking lot outside the restaurant. Lai, Johnny Lai, Voong, Vong, Tong, and Leung left the restaurant soon thereafter. Hunyh drove up near Lai and Voong, who were standing together outside the restaurant. Some words or looks were exchanged, perhaps, and then Petitioner shot and killed Lai. At the time of the shooting, Lai was at least 12 feet away from Petitioner, was not armed, and was not moving towards Petitioner. After the shooting, Huynh drove Petitioner to El Monte,

where Petitioner got rid of the gun. Petitioner later told Huynh that Lai was a member of the Wah Ching gang. According to other V-Boys gangmembers, Petitioner later bragged about shooting Lai.

Throughout the trial, Petitioner's counsel attempted to impeach the prosecution's witnesses based on the fact that they were Wah Ching gang members, or associates, and had been convicted of crimes, including some violent crimes.

During jury deliberations, the prosecutor discovered additional police reports relating to Tong, Vong, and Voong. These reports documented incidents involving murder, assault, and gun violence by these witnesses. These reports also showed that the victim, Lai, and his brother, Johnny Lai, were with Wah Ching gang members during some of the incidents. Specifically, the evidence documented:

1. On February 17, 1997, three cars, including one belonging to Tong's mother, pulled up near a local high school and 15 to 20 men got out and beat 5 victims. Several of the perpetrators used clubs. Just before leaving, one of the men yelled, "Wah Ching." The following day, the police found clubs resembling the weapons used in the assaults in Tong's bedroom and a bloodied golf club in his mother's car.
2. On March 6, 1997, Tong, accompanied by Alan and Johnny Lai, drove by the high school several times despite having been expelled from the school and having been repeatedly told to stay away.
3. On September 27, 1997, the police questioned Johnny Lai in connection with a fight that took place in a parking lot outside a restaurant in Monterey Park. Johnny admitted to police that he had a hockey stick with him for protection,

which he claimed he needed because he hung out with gang members who often got into fights.

4. On November 5, 1997, two Wah Ching gang members were arrested for robbery. Three weeks later, Tong went to the victim's home and threatened to injure or kill the victim if he did not drop the charges and tell the police he had made a mistake in his identifications of the robbers.

5. On November 8, 1997, Tong and a large group of Wah Ching members and associates left a restaurant in Monterey Park and followed several rival gang members onto the freeway. During the pursuit that followed, someone from the Wah Ching group shot and killed one of the rival gang members. The shooting was later discussed at Johnny Lai's house.

6. On November 9, 1997, Johnny Lai, Vong, and three other members of the Wah Ching gang attacked two men at a shopping plaza after asking them about their gang affiliation. One assailant used a club in the attack, and also ran into a victim with his car. The police report regarding the incident noted that Johnny Lai and Vong were Wah Ching gang members.

7. On December 15, 1997, shots were fired from two cars on a highway. Voong was in one of the cars.

(Return, Exh. C at 56-57.)

The police reports were turned over to the defense while the jury was deliberating. Thereafter, the jury returned a verdict of guilty. Petitioner moved for a new trial based, in part, on the untimely production of the newly discovered police reports. The trial court denied the motion for a new trial, finding that the newly discovered

SCANNED

evidence was cumulative to the other gang evidence and would not have produced a different result at trial in light of the strong evidence from the objective, non gang-affiliated witnesses. (RT 3606-07.) On appeal, the California Court of Appeal affirmed the trial court's ruling on Petitioner's new trial motion, finding it was "not reasonably probable" that the new evidence would have changed the result of the trial. (Return, Exh. C at 57.)

III.

STANDARD OF REVIEW

The standard of review in this case is set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ [only] if the state court arrive[d] at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decide[d] a case differently than [the

United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. *Id.* at 413. To merit relief under this clause, the state court decision must be objectively unreasonable, not just incorrect or erroneous. *Id.* at 409-10, 412.

The claim raised in the instant Petition was raised before the California Supreme Court, but that court did not issue a written opinion. Nevertheless, "[w]here there has been one reasoned state judgment rejecting a federal claim, [federal courts are to presume] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Thus, this Court will consider the reasoning of the California Court of Appeal, which addressed Petitioner's claim in a written decision, to determine whether the decision is contrary to, or an unreasonable application of, federal law.

IV.

DISCUSSION

In his sole claim for relief, Petitioner contends that the prosecution violated his right to a fair trial by failing to produce the police reports relating to Alan and Johnny Lai, Tong, Vong, and Voong. (Petition at 5.) Petitioner argues that the reports were critical to Petitioner's self-defense claim and could also have been used to impeach the prosecution's witnesses. (Petition at 5.) This claim is without merit.

The Due Process Clause requires the prosecution to disclose to the defense any evidence in its possession that is both favorable to the accused and is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Required production includes impeachment as well as exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Not every failure of the prosecutor to disclose information, however, is a violation of *Brady*. A *Brady* violation occurs only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). A "reasonable" probability is a probability sufficient to undermine the court's confidence in the conviction. *United States v. Bagley*, 473 U.S. 667, 682 (1985)(internal quotation marks omitted). The issue for a federal reviewing court is whether the accused received a fair trial, despite the fact that he was denied access to the evidence. *Kyles*, 514 U.S. at 434. Thus, in order to prevail, Petitioner has the burden of proving that the government withheld evidence that was favorable to him and that he suffered prejudice as a result. *Strickler*, 527 U.S. at 281-82.

There is no dispute that the police reports were favorable to Petitioner and should have been turned over to the defense before trial. Petitioner could have used the reports to bolster his self-defense claim and, at the same time, to impeach the prosecution's witnesses. The issue for this Court is whether Petitioner was prejudiced as a result of the prosecution's failure to turn over the reports. This turns on whether it is reasonably probable that had the reports been turned over the result of the proceedings would have been different. After reviewing the trial record, the Court concludes that

it is not reasonably probable that the result would have been different and, for that reason, the Petition should be denied.

The evidence was overwhelming that Petitioner shot Lai. There were numerous eye-witnesses who testified that Petitioner shot him, including witnesses who were not aligned with the prosecution. Petitioner admitted he shot Lai. In fact, he bragged about it.

The only issue at trial was whether Lai was threatening Petitioner at the time of the shooting. There was no evidence that Lai was armed with a weapon when he was shot by Petitioner. Thus, the only way Lai could have been threatening to Petitioner was by physically attacking him. But the evidence established that Lai was at least 12 feet away (more likely 15-20 feet away) from Petitioner when Petitioner shot and killed him. (RT 1596, 1856.) Further, Petitioner was standing still, not moving toward Petitioner, when he was shot. Thus, Petitioner's claim that he shot Lai because he was being threatened by Lai and he was afraid was without evidentiary support.

Evidence of other gang-related crimes by the prosecution's witnesses would not have made Petitioner's self-defense claim any more compelling and, assuming it would have cut into the credibility of the prosecution's witnesses, would still not have altered the outcome of the trial. The jury was aware that the majority of eye-witnesses were biased in favor of Wah Ching. Most begrudgingly admitted they were gang members or associates. Many also admitted to having committed serious crimes in the past, including assault with a deadly weapon, drug and firearm possession, grand theft auto, and evading the police. (RT 996, 1257.) Assuming the jury had ignored their testimony, however, there remains substantial evidence from the other witnesses

who were not aligned with Wah Ching that Petitioner did not shoot Lai in self-defense.

Petitioner's claim that he was denied a fair trial because he was denied critical evidence is rejected because there is no reasonable probability that, had the evidence been timely disclosed, the result of the proceeding would have been different. *See Kyles*, 514 U.S. at 433. In short, the untimely disclosure of the evidence does not undermine the Court's confidence in the conviction and, for that reason, the Petition should be denied. *See Bagley*, 473 U.S. at 682.

V.

RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that Judgment be entered denying the instant Petition and dismissing this case with prejudice.

DATED: May 17, 2004.

Patrick J. Walsh
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\Cases-State Habeas\NGUYEN, N 8447\R&R.wpd